UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-2000 JGB (DTBx)** | Date | January 29, 2026 |
|---|---|---|---|
| Title | ***Robert J. Ramirez v. The Sherwin-Williams Company et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) DENYING Plaintiff's Motion to Remand (Dkt. No. 8); (2)
VACATING the February 2, 2026 Hearing; and (3) DENYING AS
MOOT Plaintiff's Request to Appear Remotely (Dkt. No. 13) (IN
CHAMBERS)**

Before the Court is Plaintiff's motion to remand.  ("Motion," Dkt. No. 8.)  The Court
finds this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.
After considering the papers filed in support of and in opposition to the matter, the Court
**DENIES** Plaintiff's Motion and **VACATES** the hearing set for February 2, 2026.

## I.    BACKGROUND

On May 27, 2025, Plaintiff Robert J. Ramirez, individually and on behalf of similarly
situated individuals, filed a putative class action complaint in the Superior Court of the County of
San Bernardino against Defendant The Sherwin-Williams Company and Does 1–100.
("Complaint," Dkt. No. 1-1.)  The Complaint alleges the six causes of action under
the  California Labor Code and California Business and Professions Code: (1) failure to pay
minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure
to provide rest periods; (5) failure to provide complete and accurate wage statements; (6) failure
to timely pay all earned wages and final paychecks due at time of separation of employment.
(See id.)  Plaintiff also alleges a cause of action for unfair business practices under the Business
and Professions Code sections 17200 et seq.  (Id.)

On August 1, 2025, Defendant removed the action pursuant to the Class Action Fairness
Act of 2005 ("CAFA").  ("NOR," Dkt. No. 1.)

On December 10, 2025, Plaintiff filed the instant Motion. (Mot.) Defendant opposed the Motion on January 5, 2026. ("Opp'n," Dkt. No. 11.) In support of the Opposition, Defendant filed declarations by Levon Massmanian ("Massamanian Decl.," Dkt. No. 11-1) and David Momic ("Momic Decl.," Dkt. No. 11-2). Plaintiff replied in support of the Motion on January 12, 2026. ("Reply," Dkt. No. 12.)

## II.  LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). The statute was designed "to be interpreted expansively." Id. (citing S. Rep. No. 109-14, at 42 (Feb. 28, 2005)). Thus, while "a presumption against federal jurisdiction exists in the usual diversity case, no antiremoval presumption attends cases invoking CAFA." Greene v. Harley-Davidson, Inc., 965 F.3d 767, 772 (9th Cir. 2020).

"Where, as here, a plaintiff's state court complaint does not specify a particular amount of damages, the removing [party] bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the threshold at the time of removal." Canela v. Costco Wholesale Corp., 971 F.3d 845, 849 (9th Cir. 2020) (quoting Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)). The amount in controversy "is simply an estimate" rather than a "prospective assessment," such that a defendant "need not present evidence of what its ultimate liability will be." Perez v. Rose Hill Co., 131 F.4th 804, 808 (9th Cir. 2025) (quoting Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010)). Instead, a defendant's calculations may "rely on a chain of reasoning that includes assumptions." Id. (quoting Arias v. Residence Inn by Marriott, 936 F.3d 920, 925 (9th Cir. 2019) (citation modified)). While such assumptions "cannot be pulled from thin air, they can be founded on the allegations of the complaint." Id. (citation modified); Ibarra, 775 F.3d at 1197 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."). The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted).

District courts must "determine if the defendant's reasoning and underlying assumptions are reasonable." Perez, 131 F.4th at 808 (quoting Jauregui v. Roadrunner Transp. Servs., Inc., 28 F.4th 989, 993 (9th Cir. 2022)). Whether an assumption is reasonable "may depend on which element of the amount-in-controversy calculation is at issue." Id. "[A]n assumption is not unreasonable simply because another equally valid assumption may exist." Id.; see also Arias, 936 F.3d at 927 ("An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount,' as the district court reasoned." (quoting Lewis, 627 F.3d at 401)). To

the contrary, if the plaintiff "believe[s] that some other assumption . . . [is] more reasonable," they are more than "free to propose [it]." Perez, 131 F.4th at 810.  Only when the defendant's "interpretation of the allegations in the complaint [is] unreasonable," is the defendant required to submit competent evidence.  Id. at 809.  "After considering any evidence put forth by the parties, and assessing the reasonableness of the defendant's assumptions, 'the court then decides where the preponderance lies.'"  Harris v. KM Indus., Inc., 980 F.3d 694, 701 (9th Cir. 2020) (quoting Ibarra, 775 F.3d at 1198).

### III.  DISCUSSION

As an initial matter, the parties only dispute whether CAFA's $5 million amount in controversy is satisfied.  Plaintiff asserts that Defendant fails to meet its burden because "Defendant's proffered calculations are founded entirely on unsupported data points, as well as untenable assumed violation rates that are wholly divorced from the limitations inherently contained in the allegations in the Complaint, and without any supporting evidence."  (Mot. at 5.)  Specifically, Plaintiff contests the violation rates for the following claims: (1) overtime; (2) meal period; (3) rest break; (4) wage statement; and (5) waiting-time.  (Id. at 9–19.)  In many instances, Plaintiff advances the argument that Defendant's violation rates are not supported by evidence.  (See generally Reply.)  Such arguments are at odds with the Ninth Circuit, which has pointed out that "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist."  Perez, 131 F.4th at 808 (emphasis in original).  For this reason, "a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint."  Id.  Additionally, Plaintiff does not contest the accuracy of the evidence presented in the Declarations of Levon Massmanian and David Momic with respect to the number of employees, the number of pay periods, the number of shifts, the average shift length, and the average rates of pay.  Thus, the Court need only assess whether Defendant's violation rates are reasonable in light of Plaintiff's allegations in the Complaint.

### A.  Unpaid Wages[1]  & Liquidated Damages (First and Second Claims)

Defendant asserts that the amount in controversy for Plaintiff's unpaid wages claim ranges from $106,400 to $531,999.  (Massmanian Decl. ¶¶ 20–21.)  With respect to liquidated damages, Defendant estimates a range of $86,307 to $1,790,080.  (Id. ¶ 24.)  Plaintiff contends the violation rates underpinning these estimates are "wholly arbitrary and speculative."  (Reply at 5.)  Looking to the Complaint, Plaintiff alleges Defendant "failed to pay Plaintiff and similarly situated all wages at the applicable minimum wage for all hours worked due to [Defendant's] policies, practices, and/or procedures[.]"  (Complaint ¶ 20.)  Plaintiff further alleges this

---

[1] "Unpaid wages" incorporates three types of wages: (1) class members not being paid minimum wage; (2) class members not being paid for overtime; and (3) class members not being paid for working through rest and meal periods.  The Court notes that the parties appear to consolidate all three types into a generic "unpaid wage claim" in which employees worked "off-the-clock."  (See Opp'n at 11–13; Reply at 5.)

practice occurs during opening and closing shifts, and where employees "worked shifts of five or more hours without authorizing or permitting any meal period, yet deducting time from hours worked to reflect meal periods which had not in fact been provided." (Id. ¶¶ 44, 54, 63.) Defendant's range is predicated on the assumption that, at least one shift per week, class members were not paid for one to five minutes' worth of work. (Massmanian Decl. ¶¶ 19–21.) Contrary to Plaintiff's assertion, Defendant's assumption of the violations is tethered to language in the Complaint and is reasonable given the allegations. Because Defendant's liquidated damages are based on the calculation of unpaid wages, the Court also finds that the estimation is grounded in Plaintiff's allegations. Accordingly, the Court finds that Defendant's estimates with respect to unpaid wages and liquidated damages are reasonable.

**B. Meal Periods (Third Claim)**

In the Reply, Plaintiff does not contest Defendant's estimated amount in controversy of $735, 584 for meal period violations. (See Reply at 3–4.) Accordingly, the Court finds that Defendant's estimates regarding the amount in controversy with respect to meal period violations are reasonable.

**C. Rest Periods (Fourth Claim)**

Defendant asserts that Plaintiff's amount in controversy for rest period violations ranges from $1,808,286 to $2,712,430. (Massmanian Decl. ¶ 15.) Plaintiff contends that Defendant's figures with respect to rest break violations are "wholly speculative" because there is no evidence for any rest break violations. (Reply at 3.) Again, Defendant need not provide evidence of violation rates, but "only make reasonable assumptions based on the plaintiff's complaint." Perez, 131 F.4th at 806. Plaintiff alleges that he and the Rest Period Class "regularly worked shifts of more than three-and-a-half (3.5) hours" and that Defendant "employed policies, practices, and/or 20 procedures that resulted in their failure to authorize or permit all legally required and compliant rest periods to Plaintiff and the Rest Period Class." (Complaint ¶ 70.) Based on these allegations, Defendant estimated violation rates between 10% and 15%. (Massmanian Decl. ¶ 15.) Given that Plaintiff alleges "regular[]" violations and policies and practices that maintain a system of unlawful conduct, without any limitation, Defendant's violation rate is reasonably tied to the Complaint. See Ortiz-Dixon v. FedEx Ground Package Sys., Inc., No. 23-CV-01140-ODW-SPx, 2023 WL 9064893, at *3 (C.D. Cal. Dec. 7, 2023) (finding a 20% violation rate assumption to be reasonable where allegations of "from time to time" are coupled with "pattern and practice" allegations in the complaint). Accordingly, the Court finds that Defendant's estimates regarding rest period violations are reasonable.

**D. Wage Statements (Fifth Claim)**

Defendant asserts that Plaintiff's wage statement violations result in an amount in controversy ranging from $1,026,000 to $1,933,250. (Massmanian Decl. ¶ 28.) Once again, Plaintiff argues the violation rates of 25% or 50% are "wholly arbitrary and untethered from the general pattern and practice allegations in the Complaint." (Reply at 7.) However, Plaintiff's

---

wage statement claim is "derivative of Plaintiff's claims above," meaning that any member "who did not receive all their earned wages (including minimum wages, overtime wages, meal period premium wages, and/or rest period premium wages)" would be entitled to recover. (Complaint ¶¶ 35, 150.) Thus, each putative class member need suffer only *one* of the other injuries alleged in the Complaint to be entitled to recover waiting time penalties. Further, "Plaintiff alleges that Defendant[] failed to provide accurate wage and hour statements to him and the Wage Statement Class who were subject to Defendant's control for uncompensated time and who did not receive all their earned wages[.]" (Complaint ¶ 150.) Again, Plaintiff did not limit or qualify his allegations and appears to claim that all the Wage Statement Class, which necessarily includes the classes for unpaid wages, were not provided with accurate statements. Therefore, Defendant's 100% violation rate is reasonable. Cavada v. Inter-Cont'l Hotels Grp., Inc., No. 19-CV1675-GPC-BLM, 2019 WL 5677846, at *8 (S.D. Cal. Nov. 1, 2019) (finding that a "100 percent violation rate is reasonable" for inaccurate wage statements after reasonably assuming that the class members suffered at least one violation of meal or rest breaks per pay period). Accordingly, the Court finds that Defendant's estimates regarding the amount in controversy with respect to wage statement penalties are reasonable.

## E. Waiting-time Penalties (Sixth Claim)

Defendant asserts that Plaintiff's waiting-time penalties place at least $7,040,349 in controversy. (See Opp'n at 19–21.) Plaintiff contends that the allegations in the Complaint do not support Defendant's 100% violation rate. (Reply at 6.) However, the allegations in the Complaint support such a rate as Plaintiff claims that Defendant "failed to pay Plaintiff and . . . the Waiting Time Class, with all wages earned and unpaid prior to separation of employment[.]" (Complaint ¶ 160.) Plaintiff does not qualify his allegations that only "some" class members suffered this violation or that Defendant only failed to pay "at times," thus, Plaintiff's allegations support assuming a 100% violation rate. See, e.g., Mejia v. DHL Express (USA), Inc., 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) ("Plaintiff's FAC does not contain any allegations that suggest a 100% violation rate is an impermissible assumption.").

Furthermore, to be entitled to recover waiting time penalties, each putative class member need suffer only *one* of the other injuries alleged in the Complaint. Hence, Plaintiff's waiting-time penalties claim is also essentially derivative of Plaintiff's claims discussed above. (See Complaint ¶ 161.) Therefore, Defendant's 100% violation rate is not only reasonable. See Demaria v. Big Lots Stores - PNS, LLC, 2023 WL 6390151, at *7 (E.D. Cal. Sept. 29, 2023) ("Based on Defendants' assumptions regarding the minimum wage and meal and rest break violations, which the Court has found to be reasonable, it is also reasonable to assume all or nearly all employees in the class would be entitled to recovery of waiting time penalties."); Noriesta v. Konica Minolta Bus. Solutions U.S.A., 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019) (holding that if "Defendant had a 'pattern and practice' of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced [waiting time] violations"); Lopez v. Aerotek, Inc., 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding that a defendant "properly used a chain of reasoning based on the Complaint to conclude that the amount-in-controversy requirement is

met in this case" and the plaintiff "does not assert or suggest an alternative violation rate on which the Court should rely" "although [they were] afforded the opportunity to do so on this motion"). Accordingly, the Court finds that Defendant's estimates regarding the amount in controversy with respect to waiting-time penalties are reasonable.

### F.  Total Amount in Controversy Estimate

Based on the aforementioned, the Court finds the amounts in controversy exceed $5 million, thereby satisfying CAFA's jurisdictional threshold.[2]

## IV.  CONCLUSION

For the reasons above, the Court (1) **DENIES** Plaintiff's Motion; (2) **VACATES** the February 2, 2026 hearing; and (3) **DENIES AS MOOT** Plaintiff's request to appear remotely (Dkt. No. 13).

**IT IS SO ORDERED.**

---

[2] The Court need not decide the attorneys' fees award at stake because amounts in controversy discussed are enough to meet CAFA's amount in controversy requirement.